**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

MORGAN C. JONES,

      **Plaintiff,**

                                   **Case No. 1:25-cv-817**

    v.

**SYNCHRONY FINANCIAL, et al.,**         **JUDGE DOUGLAS R. COLE**
                                      **Magistrate Judge Bowman**

      **Defendants.**

## OPINION AND ORDER

Plaintiff Morgan C. Jones is suing his former employers, Defendants Synchrony Financial and Synchrony Bank (collectively Synchrony). (Compl., Doc. 1-4).[1] But Synchrony contends that Jones's employment agreement mandates arbitration and asks the Court to compel him to bring his claims there instead. (Mot. to Compel Arbitration, or Alternatively, to Dismiss, Doc. 9). For the reasons stated below, the Court **GRANTS** Synchrony's request. But rather than dismissing the case (as Synchrony asks), the Court opts to **STAY** the matter pending completion of arbitration proceedings.

## BACKGROUND

In September of 2014, Jones began a new position at Synchrony. (Jones Decl., Doc. 12-1, #353). Well, more accurately, he began working at General Electric Company (GE). (Doc. 9, #199). That is because, at that time, Synchrony was a GE

---

[1] Jones attaches as an exhibit to his Complaint (Doc. 1), what he refers to as the "Corrected Main Document," (Doc. 1-4). The Court treats that latter document as his operative complaint.

subsidiary.[2] (*Id.*). That changed in November 2015 when Synchrony spun off from GE to become an independent company. (*Id.*). Jones, evidently, chose to remain at Synchrony.

Ultimately, though, his employment there did not end well. After he left, Jones filed a charge of discrimination and retaliation with the Equal Employment Opportunity Commission (EEOC). (Doc. 1-4, #24). The EEOC dismissed that charge with no determination on the merits, issuing him a right-to-sue letter. (*Id.*). So, Jones filed a pro se Complaint in this Court.[3] (*See generally id.*). There, he alleges that during his employment, "Defendants engaged in unlawful employment practices in violation of federal law" against him. (*Id.* at #25). Spelling that out a bit further, he asserts seven claims: (1) disability discrimination under the Americans with Disabilities Act (ADA); (2) failure to accommodate under the ADA; (3) retaliation under the ADA and Title VII of the Civil Rights Act of 1964 (Title VII); (4) hostile work environment, allegedly based on a disability and protected activity; (5) "reverse" race and gender discrimination under Title VII; (6) interference with rights and retaliation under the Family Medical Leave Act (FMLA); and (7) post-termination retaliation, with respect to a mediation session attended by the parties, under the ADA. (*Id.*).

Defendant Synchrony responded to those claims by moving the Court to compel arbitration, or in the alternative, to dismiss the case. (Doc. 9). That is because,

---

[2] Synchrony Bank is itself a subsidiary of Synchrony Financial. (Doc. 9, #199).

[3] Jones has since obtained counsel. (*See* Docs. 1-4, 11).

according to Synchrony, Jones agreed to arbitrate all employment-related legal claims through Synchrony's alternative dispute resolution program. (*Id.* at #199). Specifically, while an employee of GE (through its subsidiary Synchrony), Jones had agreed to resolve claims related to his employment through an ADR program called Solutions. (*Id.*). And during the spin-off process, the company modified that agreement, as the agreement allowed it to do, such that he was instead subject to an ADR program called Resolution. (*Id.* at #200). Both programs require Jones to bring all disputes with his employer in arbitration, not court. (Doc. 9-1, #229, 261–2).

In describing which claims are covered (and so must be arbitrated), Solutions and Resolution use identical language:

> Covered Claims include all claims that arose out of or are related to an employee's employment or cessation of employment (whether asserted by or against the Company), where a court or government agency in the jurisdiction in question would otherwise have the authority to hear and resolve the claim under any federal, state or local (e.g., municipal or county) statute, regulation or common law.

(*Id.* at #227, 260). The agreements also explicitly specify certain types of covered claims. (*Id.* at #227–28, 260–61). These include "[e]mployment discrimination and harassment claims, based on … race, sex … [and/or] disability" and "[r]etaliation claims." (*Id.* at #227, 260).

For claims that are subject to the agreements, the programs provide a tiered process for dispute resolution—starting with internal meetings and ending with arbitration.[4] (*Id.* at #233–45, 266–75). An employee must exhaust each level before

---

[4] Solutions describes four levels, while Resolution three.

moving to the next. (*Id.* at #229–30, 262). And finally, the agreements state that employees (and Synchrony) continue to be obligated to use Solutions and Resolution after termination of employment. (*Id.* at #226, 259).

So, based on those agreements, Synchrony moves to compel arbitration. (*See generally* Doc. 9). Separately, Synchrony argues in the alternative that because Jones makes few allegations regarding the facts of his case, it should be dismissed. (*Id.* at #210–13).

For his part, Jones contests the formation of both arbitration agreements. (Resp., Doc. 12, #344–47). He also requests that if the Court grant Synchrony's motion to dismiss in the alternative, he be allowed to file an amended complaint now that he has obtained counsel. (*Id.* at #349–50).

## LEGAL STANDARD

The Federal Arbitration Act (FAA) provides that "[a] written provision in … a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction … shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. Because "arbitration is a matter of contract," courts must "'rigorously enforce' arbitration agreements according to their terms." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (citation omitted); *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 878 (6th Cir. 2021).

Parties to an arbitration agreement may "delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by clear and

4

unmistakable evidence." *In re StockX*, 19 F.4th at 878 (quotation marks omitted) (quoting *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019)). "A challenge to arbitration agreement *formation*," however, "is always in the jurisdiction of the courts." *Becker v. Delek US Energy, Inc.*, 39 F.4th 351, 355 (6th Cir. 2022) (emphasis added) (citing *Granite Rock Co. v. Int'l Bd. of Teamsters*, 561 U.S. 287, 299–300 (2010)); *see Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681 (2010) (quotation omitted) ("[A]rbitration 'is a matter of consent, not coercion.'").

Section 4 of the FAA provides that if the "making of the agreement for arbitration … is not in issue," the Court must direct "the parties to proceed to arbitration." 9 U.S.C. § 4. But if formation is "in issue," then "the court shall proceed summarily to the trial thereof." *Id.* To determine whether the parties have put contract formation "in issue," the Court "applies the standard for summary judgment." *In re StockX*, 19 F.4th at 881 (first citing *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002); and then citing *Mazera v. Varsity Ford Mgmt. Servs., LLC*, 565 F.3d 997, 1001 (6th Cir. 2009)); *see* Fed. R. Civ. P. 56(a). Under that standard, Synchrony, "as the movant asserting the existence of a contract, must initially carry its burden to produce evidence that would allow a reasonable jury to find that a contract [for arbitration] exists." *In re StockX*, 19 F.4th at 881 (citations omitted). The burden then shifts to the non-moving party—here, Jones—"to cite particular materials in the record to show that there is a genuine dispute of material fact that could lead a rational trier of fact to find that a contract does not exist." *Id.* at 882 (cleaned up) (citations omitted). If, based on the competing evidence the parties

put forward, "'a reasonable finder of fact could conclude that no valid agreement to arbitrate exists,' the issue is subject to resolution by a jury." *Mazera*, 565 F.3d at 1001 (quoting *Great Earth*, 288 F.3d at 889).

## LAW AND ANALYSIS

Synchrony contends that it has put forth sufficient evidence to show that Jones agreed to arbitrate his claims. (Doc. 9, #203–209). It also contends that Jones fails to state a claim upon which relief may be granted. (*Id.* at #210–13). Because the Court agrees with the former, it does not reach the latter.

Jones primarily contests formation, so the Court starts there. Questions of formation, as the label suggests, go to whether the parties formed a contract. Or more specifically here, whether the parties formed an agreement to arbitrate as Synchrony claims. And at this stage, the standard is whether Synchrony can produce evidence that would allow a reasonable jury to determine that the elements of contract formation are present. *In re StockX*, 19 F.4th at 881. "[C]ontract formation under Ohio law[5] requires an offer, acceptance, consideration, a manifestation of mutual assent, and a meeting of the minds as to the essential terms of the contract." *McFadden v. Charter Commc'ns, Inc.*, 2024-Ohio-4564, ¶ 14 (9th Dist.). Ultimately, the Court finds that Synchrony points to sufficient evidence of those elements.

---

[5] While Jones' employment took place in Ohio, Defendants are residents of Connecticut. (Doc. 1, #1). But both parties argue under Ohio law. (Doc 9, #207; Doc. 12, #343). Thus, "[t]he parties' litigation choices allow [the Court] to avoid this choice-of-law issue." *AtriCure, Inc. v. Meng*, 12 F.4th 516, 525 (6th Cir. 2021).

As evidence of the agreement, Synchrony first points to an "Acknowledgement—Conditions of Employment" form that Jones signed. (Doc. 9-1, #280–81). He executed that acknowledgment on September 4, 2014, when he began his employment with GE. (*Id.*). There Jones agreed to the following:

> I have received and reviewed a copy of "SOLUTIONS: An Alternative Dispute Resolution Procedure" (the "Solutions Procedure"). I agree to resolve disputes in accordance with the terms of the Solutions Procedure and, accordingly, I agree as a condition of employment, to waive the right to pursue Covered Claims (as defined in the Solutions Procedure) against the Company in Court (bench or jury trial) or on a class basis in Court or arbitration. I agree to accept an arbitrator's award as the final, binding, and exclusive determination of all Covered Claims. I understand that, to the extent any Covered Claim I may have is prohibited by applicable statute or regulation from being mandated to arbitration, I will have the option to, but will not be required to, submit my claim to binding arbitration.

(*Id.* at #280). In sum, by signing on the dotted line, Jones (1) acknowledged that he had received and reviewed a copy of Solutions, and (2) agreed to resolve future disputes in accordance with Solutions' terms—including mandatory arbitration. (*Id.*). Most importantly, those terms included an explicit waiver of the right to pursue in court any Covered Claims against the "Company"—defined as GE and its "subsidiaries, affiliates, joint ventures, and parents thereof that have adopted the procedure," a group that included Synchrony at the time. (*Id.* at #226, 280). The Solutions program also contained another term that proves relevant here—it allowed GE, acting through its "Senior Vice President of Human Resources … or his or her designee," to modify the agreement so long as the Company gave affected employees 60 calendar days' advance notice. (*Id.* at #225).

That latter point matters because Synchrony is not relying so much on the Solutions program as it is the Resolution program. (Doc. 9, #200). Its argument goes like this. Synchrony says that the acknowledgment proves Jones agreed to Solutions upon his hiring. (*Id.* at #199). Then, as part of Synchrony's spin-off from GE, Synchrony (which was then an affiliate of GE, and thus part of the "Company" under the Solutions program) modified the arbitration agreement as to those GE employees employed at Synchrony. (*Id.* at #200). That modification took two forms. First, the provider changed from Solutions to Resolution. Second, the "Company" was no longer GE, but rather Synchrony. Then, by continuing his employment after those modifications (and the spin off), Synchrony says, Jones acquiesced to the modified terms. (*Id.*).

As evidence that the Solutions agreement was properly modified according to its terms, Synchrony points to two emails that went out to employees continuing their employment with Synchrony through the corporate restructuring. (*See* Doc. 9-1, #277–78). Those emails, sent on September 1 and October 1, 2015, were authored by Synchrony's "Human Resources Leader," who at the time was still a GE employee. (*Id.*). The emails informed all Synchrony employees that the Solutions program was being replaced with the Resolution program, effective December 1, 2015. (*Id.*). As those dates suggest, that notice conformed to Solutions' 60-day notice requirement for modifications.

Based on this set of events, the Court concludes that Synchrony has put forth evidence that allows a reasonable trier of fact to conclude that the parties formed an

agreement that included an arbitration provision. When he began his employment, Jones signed an acknowledgment form. There he agreed to be bound by Solutions as a condition of his employment. That shows a meeting of the minds as to an agreement to arbitrate. Separately, the Court finds that Synchrony has established that Jones is bound (starting in 2015) by Resolution as well because the original Solutions agreement was modified in accordance with its terms, and Jones continued to work after that modification.

But remember, the inquiry does not end there. The burden merely shifts to Jones to cite evidence raising a genuine dispute as to whether a contract containing an arbitration agreement exists. *In re StockX*, 19 F.4th at 881 (citations omitted). If Jones cannot do so, however, the Court must grant Synchrony's motion. Here, the Court concludes that he fails to create a genuine dispute of a material fact.

Jones seeks to "factually dispute[]" both the original contract binding him to arbitrate with GE under Solutions and the modification changing that to arbitrating with Synchrony under Resolution. (Doc. 12, #344). As to both, he relies entirely on his declaration. (*Id.*; *see* Doc. 12-1). The Court addresses each.

Start with the formation of his original arbitration agreement. On that front, Jones does not dispute that he signed the acknowledgment of his employment conditions. Instead, he argues that, because he "was not provided the full 'Solutions Procedure' or any complete arbitration handbook" during his onboarding, Synchrony has not shown his assent to those terms. (Doc. 12, #345; Doc. 12-1, #353). That argument misses the mark. In the signed acknowledgement, Jones explicitly agreed

9

that he received and read a copy of Solutions, that he agreed to arbitrate, and that he waived his right to pursue claims in court. (Doc. 9-1, #280–81). So his declaration does not create a genuine dispute about formation. Sure, if he did not in fact review or understand the arbitration agreement—which goes towards unconscionability, not formation—he may have an *enforceability* argument, but the agreement specifically assigns such matters to the arbitrator. (Doc. 9-1, #274 ("The Arbitrator, and not any court or agency, shall have exclusive authority to resolve any dispute relating to the applicability, interpretation, formation or enforceability of this Agreement including, but not limited to, any claim that the entirety or any part of this Agreement is voidable or void.")); *see, e.g.*, *Wealth Assistants LLC v. Thread Bank*, No. H-24-40, 2024 WL 2980812, at *9 (S.D. Tex. June 13, 2024) ("Plaintiff's procedural and substantive unconscionability arguments must be decided by the arbitrator and not the court."). Meaning, as they have a right to do, the "parties [have] agree[d] to 'have an arbitrator decide not only the merits of a particular dispute, but also 'gateway' questions of 'arbitrability,' such as … whether their agreement covers a particular controversy," i.e., questions of scope. *Great Am. Ins. Co. v. Johnson Controls, Inc.*, No. 1:20-cv-96, 2020 WL 4569126, at *7 (S.D. Ohio Aug. 7, 2020) (quoting *Henry Schein*, 586 U.S. at 67–68).

Jones's argument on the 2015 change from Solutions to Resolution fares no better. On that end, he does not so much dispute that GE *could* modify the agreement. Rather, he tries to create a genuine dispute as to whether it actually did so. (Doc. 12, #346). Specifically, he disputes that he received the two emails on which Synchrony

10

relies to show the modification. (*Id.*; Doc. 12-1, #353). According to Jones, he "retained emails from when [he] first started at GE and afterward, and [having] reviewed the emails available to [him, he] do[es] not have any emails attaching or providing the full 'Resolution' program document from 2015." (Doc. 12-1, #353). Nor has he found the September 1 or October 1 emails Synchrony provided to the Court. (*Id.*). But Jones's failure to find the (over ten years old) emails does not a dispute make. Synchrony has both provided the emails to the Court, (*see* Doc. 9-1, #277–78), and a current Synchrony employee testifies that she has "reviewed the e-mail addresses that were on the listservs for the e-mails dated September 1, 2015 and October 1, 2015, and Plaintiff Morgan C. Jones was sent and received both e-mails," (Shiferaw Decl., Doc. 13-1, #372). Based on that evidence, no reasonable juror could conclude, simply because Jones cannot now find those emails, that Synchrony did not send them. That means there is no genuine dispute on this fact.[6] And as to his claim that he did not receive a complete copy of the Resolution program, that again goes to enforceability, which Resolution, like Solutions, assigns to the arbitrator. (*See* Doc. 9-1, #274).

In sum, Synchrony has put forth sufficient factual matter to allow a jury to conclude that the parties formed an agreement that included an arbitration provision.

---

[6] Jones perhaps could have argued that Synchrony's "Human Resources Leader" did not have the authority to modify the Solutions agreement. Solutions provided that right, after all, only to GE's "Senior Vice President of Human Resources" or "his or her designee." (Doc. 9-1, #225). Synchrony's "Human Resources Leader" presumably could have been such a designee, but perhaps not. Jones, however, did not advance any such argument, and thus has forfeited it. *Bose v. Bea*, 947 F.3d 983, 993 (6th Cir. 2020) (citations omitted) (holding that a plaintiff forfeited her arguments when she failed to raise them in response to the defendant's summary judgment motion).

And because Jones cannot create a genuine issue of material fact as to formation, a jury resolution of the issue is unwarranted. Jones must arbitrate.

Beyond that, the Court turns to one final housekeeping matter: the appropriate remedy. Synchrony requests dismissal because all of Jones's claims must be arbitrated, and it marshals some case law in support of that proposition. (Doc. 9, #209). But the Supreme Court has foreclosed that route when at least one party requests a stay. *See Smith v. Spizzirri*, 601 U.S. 472, 475–76 (2024) ("When a federal court finds that a dispute is subject to arbitration, and a party has requested a stay of the court proceeding pending arbitration, the court does not have discretion to dismiss the suit on the basis that all the claims are subject to arbitration."). And here, albeit in rather limited fashion, Jones has done so. (Doc. 12, #350 ("If the Court compels arbitration as to any claim, Plaintiff requests that the Court stay this action instead of dismissing it.")). So the Court stays the case.

## CONCLUSION

For the reasons discussed above, the Court **GRANTS** Synchrony's Motion to Compel Arbitration, or Alternatively, to Dismiss (Doc. 9). The parties formed an agreement to arbitrate, so Jones must pursue his claims, along with any challenges to enforceability or arbitrability of those claims, in that forum. Finally, as *Spizzirri* commands, the Court **STAYS** this matter pending completion of the arbitration proceedings.

**SO ORDERED.**

April 27, 2026
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**

13